SCHOLL *v.* OLMSTEAD *et al.*

A will appointed two executors and bequeathed to them all the estate in trust for specified uses, with power to sell and convey at public or private sale without order of court, except the property mentioned in the second item. That item devised realty to the executors in trust for certain uses, and provided that should the same become unprofitable for reasons to be judged of by them, they might sell it without order of court, at public or private sale, and should reinvest the proceeds. Among the other items were · directions that would require a number of years for the executors to carry out. They were discharged as such, first turning over to themselves as trustees and receipting for the property referred to in the second item, which afterwards they sold publicly ; but the purchaser declined to take and pay for it, on the ground that the executors were not trustees under the will, and were without power to sell because of their discharge.

*Held,* that the sale was legal and valid.

March 17, 1890.

Specific performance. Administrators and executors. Trusts. Wills. Sales. Before Judge FALLIGANT. Chatham superior court. June term, 1889.

The petition of Olmstead and Adams as trustees under the will of Lavinia Lawrence, of Lucy Willis, and of Lavinia L., Gertrude M. and George Willis, the last three being the minor children of said Lucy and appearing by Olmstead and Adams, their guardians in said will and as their next friends, alleged: On November 11th, 1885, Lavinia Lawrence died testate, nominating by her will Olmstead and Adams as executors and trustees of the property hereafter mentioned. The will was duly probated, and the executors duly qualified as such on November 13th, 1885. They were

discharged as executors on the first day of August, 1887, first turning over to themselves as trustees and receipting for the property to be described. By the second item of the will lot 3 in Elbert ward on South Broad street in Savannah, with the improvements and appurtenances, was devised to Olmstead and Adams for the use and benefit of Celia Adams and Lucy Willis during their lives, and for their equal benefit during the lives of both of them; and upon the death of either Celia or Lucy, in trust for the survivor of them during her life; and upon the death of both of them, in trust for the children of Lucy; the representative of any deceased child of Lucy to stand in place of the parent. By the same item it was directed that should the property become unprofitable, by reason of fire or other causes (to be judged of by said executors and trustees), the trustees were authorized to sell it, without any order of court, at either public or private sale as might seem to them best; and in the event of such sale they were directed to invest the proceeds upon the same uses and trusts. After the probate, Celia Adams died and Lucy Willis became the sole life beneficiary. The lot contains 60 feet front running back 90 feet, and the only improvements on it are an old carpenter-shop of little or no value, from which no revenue can be derived, and three shanties which yield a very small rent. Since the testatrix's death it has been unproductive, and the trustees have been endeavoring for some time to find a purchaser for it, being satisfied that it was for the interest of the trust estate to sell it and reinvest the proceeds, but until recently had never been able to obtain what seemed to them a fair price for it. They concluded to advertise it and sell it at auction, provided a reasonable bid could be secured, and they did so on February 5th, 1889; the property being duly knocked down and charged to Louisa Scholl for $4,000,

she being the highest and best bidder, and a sufficient memorandum of the sale having been made by the auctioneer. Under the terms of the sale, the purchaser has the privilege of paying one fourth cash and the balance in one, two and three years, in instalments of $1,000, with interest at seven per cent. per annum, the unpaid purchase money to be secured by a mortgage on the property. The sale was without order of court and with the representation by petitioners that the title was all right. The price obtained is fair and adequate, and it is to the interest of the trust estate and its beneficiaries to carry out the sale; but Louisa Scholl has declined to take and pay for the property or carry out the agreement, claiming that Olmstead and Adams are not trustees under the will and had not the legal power and authority to sell the property either with or without order of court, because of their discharge as executors. But petitioners aver that they did have the power to make the sale; that it is legal and binding upon the purchaser and the trust estate, and no reason exists why it should not be carried out. Hence they ask that Louisa Scholl be decreed to perform her contract and take and pay for the property in accordance with the terms of the sale. A copy of the will is attached as an exhibit to the petition. The first item appoints Adams and Olmstead as executors, and bequeaths to them and the survivor of them all the real and personal estate of which the testatrix might die seized and possessed, in trust for the uses and purposes afterwards set forth, giving them power to sell and convey at either public or private sale without applying to any court for an order of sale, except the property mentioned in the second item and the testatrix's furniture. The second item devises the lot mentioned in the petition "unto my said executors in trust to and for the use and benefit," etc., the uses being correctly set forth in the

petition. It further provides that should the property become unprofitable as mentioned in the petition "(to be judged of by my executors), I authorize and empower my said executors to sell the said property without any order of court, at either public or private sale," etc. The third and fourth items provide for the monument and care of certain graves. The 5th, 6th and 7th items make certain specific bequests. The 8th item gives the residue of the estate to Celia Adams, Lucy Willis, Lavinia Willis and Emma Taylor. The 9th item appoints the executors guardians for the children of Lucy Willis, and executor Adams guardian for Lavinia.

The defendant demurred to the petition on the ground that no cause for relief was set forth therein. The demurrer was overruled, and she excepted.

LESTER & RAVENEL, for plaintiff in error.

DENMARK, ADAMS & ADAMS, contra.

SIMMONS, Justice.

The facts of this case will be found in the official report. It was contended by counsel for the plaintiff in error that the power to sell the property mentioned in the second item of the will was given to Olmstead and Adams solely as executors; and that after they had been discharged as executors from the administration of the estate, they had no power to sell the same as trustees. It will be observed that the testatrix named these gentlemen as her executors, and gave them this property in trust; and it is true that in all her directions in the will she speaks of them as " my executors." But taking the whole will together, and looking at the extent and duration of the duties she imposes upon them, we think it is clear that she not only intended that they should act as her executors so far as the administration of her estate under the law was concerned, but that she also intended, after the estate was properly ad-

ministered, that they should act thereafter as trustees in looking after, taking care of, and if necessary, selling the property mentioned in the second item of the will.  " The duties imposed, and the powers given to the executors in the will, are such as necessarily to constitute them trustees.  They reach much beyond mere administration."  All the duties imposed upon them in regard to this property are the powers and duties of trustees; they do not belong to the office of executors merely.  In one item of the will, the testatrix directs that the income of a thousand dollars be perpetually applied by her executors to beautifying a lot in the cemetery; and to carry out other directions which she gives to her executors, would take a long number of years.  All this goes to show, to our minds, that she did not intend to restrict these powers to these gentlemen as mere executors, but that she intended to make them trustees after the estate had been administered. We therefore think that the judgment of the court below, holding that the sale made by Messrs. Olmstead and Adams was legal and valid, was correct.  Upon this subject, see the following authorities :  Sheets' case, 52 Pa. St. 266 ; Perkins v. Moore, 16 Ala. 14 ; 1 Perry on Trusts, §263; Woerner's American Law of Administration, 2d vol. sec. 340, where the author says " that the conveyance of a power to the executor of the will does not necessarily annex such power to the office; it may be that the word 'executor' is *descriptio personæ*, simply employed to designate the donee of such power in trust, instead of repeating his name; and if such appear to be the testator's intention—where, for instance, the power given is founded in the personal confidence of the testator in the person whom he nominates as executor and trustee,—the administrator with the will annexed will not succeed to the same."

*Judgment affirmed.*