BRATTON *v.* TRUST COMPANY OF GEORGIA, administrator, *et al.*

FIRST NATIONAL BANK OF ATLANTA, executor, *v.* TRUST COMPANY OF GEORGIA, administrator, *et al.*

Nos. 13393, 13412.   OCTOBER 19, 1940.

*McElreath, Scott, Duckworth & Duvall,* for Bratton.

*Brandon, Hynds & Tindall,* for First National Bank of Atlanta.

*Smith, Smith & Bloodworth,* for Trust Company of Georgia.

WORRILL, Judge. The Trust Company of Georgia, as administrator with the will annexed of the estate of Mrs. Clara Sanders Bratton, brought its petition for construction of her will, and for direction as to the administration of her estate. She diéd in October, 1938, leaving a will executed in March, 1937, material parts of which read as follows: "I desire, on account of the advanced age and ill health of my husband, to relieve him of the responsibilities of executorship, and do herewith appoint my sister Julia Sanders Eddleman, and my brother John W. Sanders, sole executors of my estate—without bond, and they are not to be subject to the court. I desire my executors to immediately form a trust of my estate for the purpose of maintenance of my husband during his remaining lifetime, after my death. After my husband's death, I desire that this aforementioned trust be dissolved, and my entire estate then be disposed of by my executors as they see fit."

It was alleged, that the petitioner qualified as such administrator; that the sister and brother of the testatrix, who were nominated in the will as executors, are non-residents of Georgia, and as such are disqualified under the law to act as executors; that they renounced in writing such executorship, admitting their disqualification but expressly reserving to themselves as individuals "all rights and powers which may be vested, created, or conferred upon them or in their favor, under or by virtue of the said will;" that the testatrix left as her sole heir at law her husband, Laurence R. Bratton, named in the will as life-tenant; that he died in July, 1939, leaving a will naming the First National Bank of Atlanta as executor; that said bank has had his will probated in common form, and has qualified as executor; that on April 18, 1939, there was delivered to it as administrator of the estate of Mrs. Bratton a document or indenture dated April 14, 1939, formally executed by Mrs. Julia Sanders Eddleman and John W. Sanders, which purports to be an execution by the named donees of a power of appointment with reference to the remainder of the estate of Mrs. Bratton, and nominating, constituting, and appointing, as remaindermen of said

estate, Mrs. Julia Sanders Eddleman and John W. Sanders as entitled to one third undivided interest each, and James Edwin Hickey and Richard Lee Hickey, nephews of the testatrix, as entitled to one sixth undivided interest each; and that this document purports to authorize and direct the administrator of the estate to make final distribution and settlement accordingly.

Instruction of the court was prayed, as to the meaning and effect of the above-quoted provisions of the will of Mrs. Bratton, touching the disposition of her estate on the death of her husband; whether thereby a general power of appointment was given to Mrs. Eddleman and Mr. Sanders as to the remainder of said estate on the death of the life-tenant; and whether the said document constituted a valid execution of such power of appointment as was created by the will, so as to authorize a legal and final distribution of said estate thereunder. Mrs. Julia Sanders Eddleman, John W. Sanders, the First National Bank of Atlanta as executor of the will of Laurence R. Bratton, James Edwin Hickey, and Richard Lee Hickey were named as defendants and duly served. John Bratton, plaintiff in error, intervened and alleged that he was the brother and only heir at law of Laurence R. Bratton, deceased; that the purported will of Laurence R. Bratton was not his will, and intervenor intended to caveat probate thereof in solemn form; that if his caveat be sustained, there will be an intestacy, and he will be entitled to the entire estate of Laurence R. Bratton, as the only heir at law; and therefore that he is entitled to intervene in this proceeding for the protection of his rights.

All of the defendants as well as the intervenor filed answers to the petition of the Trust Company; and by consent the case was heard by the judge without the intervention of a jury. At the trial no issues of fact were raised. By stipulations of counsel and evidence the material allegations of fact in the petition were proved where not expressly admitted in the answers. It was shown by testimony that John W. Sanders wrote the will of Mrs. Clara Sanders Bratton, his sister, in his own hand, at her dictation; and that he alone of the parties was present when the will was executed and witnessed immediately after it had been written out. He testified that his father, William C. Sanders, who died several years ago, left an estate of approximately $500,000, leaving as heirs the witness's mother and five children of the decedent, including the

witness. Under the terms of that decedent's will, the widow received $100,000 and the home. The remainder of the estate was divided five ways; each child receiving an equal part, and Mrs. Clara Sanders Bratton receiving the same as the other four children. The witness estimated that she had inherited about $50,000 cash, plus real estate, which had been platted and sold off from time to time. Sanders further testified that when he and Mrs. Eddleman, his sister, did not qualify as executors under the will of Mrs. Bratton, and renounced this office, they reserved the right to carry out their sister's wishes; and that he and his sister had executed the paper dated April 14, 1939, above described, disposing of the remainder of the estate after the termination of the life-tenancy in the husband of Mrs. Bratton.

The court decreed that Laurence R. Bratton, the husband, took only a life-estate; that, as to the remainder after his death, a general power of appointment was conferred upon the defendants, Mrs. Julia Sanders Eddleman and John W. Sanders, sister and brother respectively of the testatrix; that said power of appointment was personal to said donees, not attaching to the office of executor, and not subject to be exercised by the administrator with the will annexed; that the donees of said power had made a valid written execution of said power by said indenture of April, 1939, naming, as appointees to receive in distribution of said remainder, Mrs. Julia Sanders Eddleman, sister of the testatrix, and John W. Sanders, brother, each a one-third undivided interest, and James Edwin Hickey and Richard Lee Hickey, nephews of the testatrix, each a one-sixth undivided interest. It was also decreed that neither the First National Bank as executor of the will of Laurence R. Bratton, nor John Bratton, his brother and sole heir at law, had any right, title, interest, or equity in or to the remainder of the estate of Mrs. Clara Sanders Bratton. Separate direct bills of exceptions were taken from this decree by John Bratton, and by the First National Bank as executor of the will of Laurence R. Bratton.

The first question submitted by the plaintiffs in error for our consideration and determination is, what was the effect of the provision in the will of the testatrix with reference to the title to the remainder of her property, after termination of the life-estate given to her husband, Laurence R. Bratton; that is, whether a valid

power of appointment as to such remainder was created or not. It is contended that the court erred in upholding the validity of the power, and in holding that the husband took only a life-estate, and that there was no intestacy following his death, not only because the exercise of the power by its donees was unauthorized for the reasons dealt with in the next division of this opinion, but because the wording of the will was insufficient and too indefinite to create a valid power. The plaintiffs in error rely, as authority for their position, on the case of *House* v. *Carlton,* 148 *Ga.* 472 (97 S. E. 80). There the will of a wife gave to her husband a life-interest in her estate, and provided: "The remainder of my land, after 200 acres are given to my nephew, I desire and will that my husband . . shall dispose of as he may desire." The husband died, leaving no children, after the death of the wife; and a contest arose between heirs at law of the husband and wife. This court held as follows: "There was an intestacy as to the remainder interest (except the brick-house place and 200 acres of land bequeathed to [a] nephew . .), and, on the death of the wife without children, her husband was her sole heir and took the remainder in fee in the whole estate, excluding the excepted portion." That decision is not applicable to the case at bar; for while the husband as life-tenant was there given power to dispose of the remainder of the estate "as he may desire," nevertheless he failed to exercise this power, and therefore on his death, in the absence of any exercise of the power, this court correctly held that an intestacy existed as to the remainder interest, and such interest passed to the husband as sole heir at law under the rules of distribution. That is not the case at bar; for the donees of the power to dispose of the remainder estate "as they may see fit" have exercised such power by formal written instrument, and no question arises as to a disposition of the property in the absence of the exercise of such power.

The plaintiffs in error rely also on *Wilder* v. *Holland,* 102 *Ga.* 44 (29 S. E. 134). In that case, a man, leaving as his only heir at law a wife and one daughter, made a will in which he devised land to his wife for life, with remainder to his daughter during her natural life, with the power to devise and bequeath said real estate by *will* at her death to whomsoever she might desire. After the death of the wife, the daughter executed a deed by which she

undertook to convey the fee-simple title; and a petition was brought by the administrator with the will annexed of the husband (the testator), in which he sought to cancel the deed thus executed and delivered. Under these facts this court held: "Although under the will she [the daughter] took only a life-estate in the property, with the power to dispose of the same by will, she also took by inheritance, as the sole surviving heir of the testator, the contingent interest which would have reverted to his estate in case of a failure by her to exercise this power; and the two interests thus becoming merged in her, the effect was to vest in her a complete title to the property devised." The daughter did not undertake to exercise this power by will. On the contrary, after her mother's death and before her death she made a deed to the property. The validity of this deed was upheld, even in the absence of the execution of the power by will, as the daughter, in addition to being the donee of such power, was the sole heir at law of the testator. In this connection, this court said: "If the title of [the daughter] depended upon the will alone, and the only interest which she had in the property were derived therefrom, her interest would be a life-estate with power to dispose of the property by will at her death. The mere fact that she has the power given to dispose of this property does not increase into a fee the estate which she takes; and upon her failure to exercise the power at her death, the property would revert to the estate of [the testator], to go to whomsoever his will directed in such contingency, or, upon failure of such direction, to his heirs at law. . . The power conferred being to dispose of the property by will, the deed disposing of the property would not be a good execution of the power, and would not prevent the property from reverting to the estate of the testator."

It is contended, that the effect of the trial court's decision seems to be that since the will provided for the formation of a trust by the executors, and this did not amount to anything, the husband, who was to receive the benefits of the trust for life, took a life-interest in the estate; that since the will did not create a charitable trust, which could be effectuated by the cy pres doctrine, the language is too indefinite to be executed without an application of this doctrine; that one is not required to exercise a power thus given, and it is necessary that in giving a power of appointment there should also be a provision made for a final disposition of the

property upon failure of the exercise of the power by the one vested therewith; that the donee of a power must also take some legal or equitable title; and that under the above decisions, and for these reasons, the power and trust were invalid and completely failed, and an intestacy arose, under which Laurence R. Bratton, the husband and only heir at law of the testatrix, and his only heir at law, the intervenor, took the title to the property. There is nothing in either of the above decisions, on principle or otherwise, which would support any contention that the power of appointment given in the will involved is invalid for any reason assigned. All that either decision holds is, that if and when a general power of appointment is given, and the same is not exercised in the manner required by the terms of the power, the law will step in and distribute the property under the laws of inheritance, in the absence of any other direction in the will creating the power. In the instant case the donees of the power to dispose of the remainder estate "as they see fit" have exercised such power by a formal written instrument, and no question arises as to a disposition of the property on account of a failure to exercise the power. Nor is there anything in those decisions to support the contention that it is necessary, in giving a power of appointment, that there should also be a provision made "for a final disposition of the property upon failure of the exercise of the power by one vested with such power;" or the contention that the donees of such a power must also take some legal or equitable title. As to the latter contention, see *Coleman* v. *Cabaniss,* 121 *Ga.* 281 (48 S. E. 927); *Smith* v. *Pharr,* 162 *Ga.* 358 (133 S. E. 863); In re Watts Estate, 202 Pa. 85 (51 Atl. 588); 69 C. J. 824 (§ 1926). The court did not err in its ruling on these questions.

We now deal with the second question presented by the plaintiffs in error, whether or not the persons named as executors in the will could exercise the power when they were disqualified to act as executors and did not undertake to so act. More specifically, construction of the following provisions must be determined: "I desire, on account of the advanced age and ill health of my husband, to relieve him of the responsibilities of executorship, and do herewith appoint my sister Julia Sanders Eddleman, and my brother John W. Sanders, sole executors of my estate—without bond, and they are not to be subject to the courts. I desire my

executors to immediately form a trust of my estate for the purpose of maintenance of my husband during his remaining lifetime, after my death. After my husband's death, I desire that this aforementioned trust be dissolved, and my entire estate then be disposed of by my executors as they see fit." The general question here involved is, what was the intention of the testatrix? "In the construction of all legacies, the court shall seek diligently for the intention of the testator and give effect to the same as far as it may be consistent with the rules of law." Code, § 113-806. It has often been said that all wills differ, each is a law unto itself, and must be construed according to its own terms. Underlying intent is sought. See *Cook* v. *Weaver*, 12 *Ga.* 47, 50; *Sumpter* v. *Carter*, 115 *Ga.* 893, 896 (42 S. E. 324, 60 L. R. A. 274); Smith *v.* Bell, 6 Peters, 68, 80 (8 L. ed. 322). "Decisions in other cases are therefore rarely of controlling or even great importance." *Citizens & Southern National Bank* v. *Fleming*, 181 *Ga.* 116, 120 (181 S. E. 768). "When called upon to construe a will, the court may hear parol evidence of the circumstances surrounding the testator at the time of its execution; so the court may hear parol evidence to explain all ambiguities, both latent and patent." Code, § 113-807.

As to the power in the will involved, it is pertinently said in 49 C. J. 1279, § 100: "Where a power is conferred upon a person or persons by name, it is ordinarily personal, and can be exercised only by the donees named; but when it is given to a class or to a designated person or persons merely virtute officii, it is not personal, and may be exercised by the person or persons for the time being members of the class or holding the office." "Administration with the will annexed is granted where the deceased died testate, but no executor is nominated or none appears to qualify and execute the will." See Code, § 113-1210. "An administrator with the will annexed shall have the powers of the executor, except such as manifestly arise from personal trust and confidence placed in the executor named." § 113-1502. However, "the donee of a power who is also appointed executor or trustee by the instrument creating the power is not deprived of his right to exercise it by renouncing, resigning, or being discharged from his office or trust, unless the power was given him simply virtute officii." 49 C. J. 1281 (§ 103), and cit., including *Scholl* v. *Olmstead*, 84 *Ga.* 693, 696 (11 S. E. 541).

The plaintiffs in error contend that where discretionary power is given by will to an executor merely by saying the "executor of my will," the power would necessarily vest in the individual occupying that position when the time came to exercise the discretion referred to, and could never be exercised by a party intended to serve as executor, but who never in fact or law did serve. *Rowe* v. *Henderson Naval Stores Co.*, 143 *Ga.* 756, 759 (85 S. E. 917), is cited as authority. In that case the will provided that "my wild land be sold at such time and place as may be to the best interest of my estate, at the discretion of my executors and the ordinary of this county." The land was sold by the executors, and their deed was attacked on the ground that it did not appear that the ordinary had joined in or assented to the conveyance. In upholding this attack the court held: "It is contended that where a power is conferred on a person who may, for the time being, fill a particular office, the power attaches to the individual filling the office at the time of the exercise of the power, and not to the office, and therefore that the concurrence of the ordinary was essential to the exercise of the power of sale by the executors. We are inclined to take this latter view as applicable to the facts of this case. The testator's intention was to authorize the sale of his wild land at such times and places as, in the joint discretion of his executors and the incumbent of the office of ordinary at the time of the exercise of the power, might be deemed to be to the best interest of his estate." It is insisted that this decision is conclusive on the question of the right of the nominated executors to exercise their purported power, and that under such authority any attempt on their part to exercise it would be void. In that case, however, the court was dealing with an entire failure of the ordinary to act, as required by the will. Under the facts and for the reasons stated, that case and others relied on, which have been discussed, are not applicable to the question under consideration.

A mere casual reading of the will in the case at bar discloses that, because he was very old and in ill health, the testatrix relieved her husband of any responsibilities of executorship or management of the estate. Next to her husband she reposed personal confidence in her sister, Mrs. Julia Sanders Eddleman, and her brother, John W. Sanders, who were named as executors, relieved of bond, and were not to be "subject to the courts." The close

relationship of the named executors to the testatrix and the manifest confidence reposed in them by her clearly appear. This sister and brother were charged with the trust of maintenance of the husband during his lifetime, and following the death of the testatrix. After the death of the husband, this sister and brother were given the power to dispose of the remainder of the estate "as they see fit." The evidence shows that the testatrix dictated this will to her brother, John W. Sanders, and it was written out by him in longhand and immediately executed by her in his presence. Again this demonstrates the close relationship between the testatrix and her brother, and the confidence reposed by her in him. He testified that he wrote out the will exactly as it was dictated. Therefore the will was not expertly drawn by a lawyer or by one learned or skilled in the matter of drafting wills, and the words employed the more strongly should be considered and construed from a layman's standpoint. In other words, when the testatrix used the word "executors" in the power of appointment above quoted, it would seem fair and proper to assume that she had in mind only her sister and brother whom she had previously nominated as her executors, and in whom she manifestly reposed the utmost confidence. The testatrix did not know or anticipate the fact of the legal disqualification of her sister and brother to serve as executors, due to their non-residence in the State of Georgia. No provision was made for any contingency which might arise from their failure or refusal to serve for any reason, or for their possible death before either the death of the testatrix or the death of the life tenant, her husband. In short, her mind was centered on the fact that she desired her sister and brother personally to take care of her husband during his lifetime, and on his death to dispose of what was left of her estate as they saw fit.

Furthermore, it appears from the evidence that the testatrix had inherited from her father a substantial estate, as had her sister and brother. She had no children. After her husband had been taken care of out of her estate as long as he lived, the mind of the testatrix naturally turned to her side of the family, her sister and her brother, rather than to any relative of her husband. It was her intention that after the death of her husband the estate in remainder should return to her family fold, so to speak, and be disposed of in and by the survivors of the Sanders family, namely,

Mrs. Julia Sanders Eddleman and John W. Sanders, the sister and brother of the testatrix. The particular disposition of this remainder in and by the Sanders family the testatrix left to her brother and sister, by reason of her personal confidence in them, as clearly demonstrated, and her admitted close relationship. The execution of this power by the brother and sister is wholly consistent with the foregoing views, distributing as it does the remainder of said estate between the said sister and brother and two nephews, the sons of a deceased sister.

There is nothing in the will or in the evidence to indicate the slightest desire or intention on the part of the testatrix that her estate or any part thereof should go to or vest in John Bratton, the brother of her husband, or any member of the Bratton family, beyond the support and maintenance of her husband during his lifetime. It further appears that even the husband of the testatrix made a will which is not to the liking of his brother, one of the plaintiffs in error, since it is the announced intention of the brother to caveat the husband's will, and attack it as invalid. It appears that the real effort in this case is that of the sole heir at law of the husband to obtain the remainder of the estate of the testatrix, contrary to her expressed will and intention. In our judgment, the power of appointment here given as to the remainder interest in the estate was personal to the individuals named as executors, and did not annex itself to the office of executor. The use of the word "executors" in the power of appointment was mere descriptio personæ, and simply a more convenient expression than a repetition of their respective names would have been. See *Mastin* v. *Bernard*, 33 *Ga*. 520.

We have carefully considered every point made by the parties in their briefs and all authorities cited as to the questions presented. We find no decision which requires a conclusion other than the ones which we have reached. We do not deem further detailed discussion necessary. Under the statutes, authorities, and decisions applicable to the undisputed facts, this court holds that the will here under consideration created a general power of appointment as to the remainder of the estate, which power was personal to the sister and brother of the testatrix, and was not annexed to the office of executor; and that, the donees of said power having properly exercised it, the defendant in error, the adminis-

trator with the will annexed, is authorized and directed to make final distribution of the estate of the testatrix in accordance with such exercise and her plain and manifest intention. The judge did not err in his decree. The judgment stands

*Affirmed. The Justices and Judges concur.*