ESTATE OF Mary G. WORTHLEY.

Supreme Judicial Court of Maine.

Argued Nov. 9, 1987.
Decided Jan. 5, 1988.

Alan E. Shepard (orally), Kearns, Shepard & Read, Kennebunkport, for appellees.

James H. Titcomb, Kevin S. Flaherty (orally), Waterhouse, Titcomb, Flaherty & Knight, Sanford, for appellant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

This appeal presents the question whether a general power of appointment vested by a will in three donees survives when one of the three predeceases the testator. Arthur Abbott,[1] personal representative of the Estate of Mary G. Worthley, late of West Lebanon, appeals from an order of the York County Probate Court, construing the following article of Miss Worthley's will in light of the fact that Harriet Fogg predeceased her:

> FIFTH: I request that my friends, Harriet Fogg, and Reverend and Mrs. Fred Robie of Sanford, Maine, shall insofar as possible specify the disposition to be made of the remainder of my furniture and furnishings, and I request that my Executor shall carry out the formalities of any such gift, sale or other disposition as they specify.

The Probate Court declared that Article Fifth "allows Reverend and Mrs. Fred Robie to specify themselves and/or other persons as the recipients of the remainder of decedent's furniture and furnishings." Although we do not fully agree with the reasoning used by the Probate Court to reach that conclusion, we affirm its decision that the Robies have a general power of appointment over Miss Worthley's furni-

ture and furnishings that she did not specifically bequeath.

Mary Worthley died testate on April 21, 1986. Harriet Fogg, one of the persons named in Article Fifth of Miss Worthley's will, had predeceased her. In his petition filed pursuant to 18–A M.R.S.A. § 3–1001 (1981), the personal representative asked the Probate Court to determine whether, in these factual circumstances, Reverend and Mrs. Robie had the power to designate themselves and others as the recipients of Miss Worthley's remaining furniture and furnishings.

■ The parties suggest that the disputed language could be construed to create either a trust, a specific devise, or a power of appointment. The Probate Court correctly held that Article Fifth did not create a trust. "No trust is created if the transferor does not manifest an intention to impose enforceable duties upon the transferee. His intention not to impose enforceable duties may be shown by the fact that he uses precatory rather than mandatory words." *Restatement (Second) of Trusts* § 125 comment a, at 268 (1959). The precatory language used by Miss Worthley in Article Fifth negates any intention to impose a legal obligation on her three friends to dispose of the property.

■ The Probate Court did err, however, in stating that the will provision created a specific devise. A devise is defined in the Probate Code as "a testamentary disposition of real or personal property." 18–A M.R.S.A. § 1–201(7) (1981). In this case, Article Fifth begins "I request that my friends ... insofar as possible specify the disposition to be made of the remainder of my furniture and furnishings...." That language contrasts sharply with the preceding three articles, all of which begin "I give and bequeath...." The second article directs the executor to sell the testatrix's residence and to distribute the proceeds to named individuals. The third article bequeaths certain specific items of personal property to named individuals. The specif-

---

1. Mr. Abbott has standing because he is not only the personal representative but also a residuary beneficiary with a potential interest in the disposition of the property. *Estate of Cushman,* 501 A.2d 811, 812 n. 1 (Me.1985).

ic fourth article bequeaths certain sums of money to named individuals. Viewing Article Fifth in light of the preceding provisions, it is certain that Miss Worthley did not intend to make an outright devise of the property jointly to Mrs. Fogg and the Robies.

Rather than an outright devise, we conclude that Article Fifth created a general power of appointment. Miss Worthley in plain and unmistakable language vested in her three friends the power to "specify the disposition to be made of the remainder of my furniture and furnishings." That power conforms to the classical definition of a general power of appointment, since the donees of the power (Harriet Fogg and Reverend and Mrs. Robie) may appoint to anyone including themselves. *See Moore v. Emery,* 137 Me. 259, 274, 18 A.2d 781, 788 (1941). There remains only one serious question in this case: what effect does the death of one of the three donees prior to the death of the testatrix have upon the general power of appointment? We conclude that under Miss Worthley's will the two surviving donees have the same joint power to appoint the subject personal property as all three donees would have held jointly if Harriet Fogg had not predeceased the testatrix.

A testator's intent must control the proper interpretation of a power of appointment just the same as any other provision in a will:

The guiding principle of a court in construing a will is to determine the intent of the testator, which must be found from the particular language which he has used read in connection with the will taken as a whole and in cases of doubt in the light of the surrounding circumstances. There is no particular magic in isolated phrases. Language which may mean one thing when applied to one state of facts may have to be interpreted differently when applied to another. Precedents are of less importance than else-

where in the law; and to quite an extent each case must be considered by itself. *Id.* at 277–78, 18 A.2d at 790. *See also* 18–A M.R.S.A. § 2–603 (1981). The *Restatement (Second) of Property* (1986) sees manifestation of the donor's intent as essential to the creation of a power of appointment, *id.* § 12.1, and looks to the donor's intent for the standards that limit a donee's exercise of that power, *id.* § 12.2. *See also id.* § 12.2 comment c ("The scope of a power can be limited in many different ways by the donor's manifestation of intent").

Miss Worthley unfortunately did not make her intent express in the contingency that has in fact occurred; namely, the nonsurvival of one of the donees of her general power of appointment. Few reported decisions have addressed the question with which we are here faced, but none that we have found directly contradicts the overriding proposition that the answer must lie in the intent of the testator, whether that intent is expressly declared or is "discovered within the four corners of the [will], read in the light of the surrounding applicable circumstances." *Estate of Thompson,* 414 A.2d 881, 887 (Me.1980). The United States Supreme Court made this point in *Peter v. Beverly,* 35 U.S. (10 Pet.) 532, 9 L.Ed. 522 (1836), a point of origin for later decisions on the issue. After noting that the English rule depends primarily on whether the power is coupled with an interest,[2] the Supreme Court went on to observe:

In the American cases, there seems to be less confusion and nicety on this point; and the courts have generally applied to the construction of such powers, *the great and leading principle which applies to the construction of other parts of the will, to ascertain and carry into execution the intention of the testator.* When the power is given to executors, to be executed in their official capacity of executors, and there are no words in the will warranting the conclusion, that the testator intended, for safe-

2. The Robies do not have a power coupled with an interest merely because they are authorized by the general power to appoint to themselves.

*See Peter v. Beverly,* 35 U.S. (10 Pet.) 532, 564, 9 L.Ed. 522 (1836).

ty or some other object, a joint execution of the power; as the office survives, the power ought also to be construed as surviving. And courts of equity will lend their aid to uphold the power, for the purpose of carrying into execution the intention of the testator, and preventing the consequences that might result from an extinction of the power....

*Id.* at 564 (emphasis added). We must then examine Miss Worthley's will to determine *not* whether she coupled the power of appointment with an interest, *but more directly* whether she intended that power to survive the death of one of the donees.[3] On this score we conclude with more than the usual confidence that she did.

The disputed article empowers Miss Worthley's "friends," Harriet Fogg and Reverend and Mrs. Robie, to specify the disposition of her furniture and furnishings remaining after she specifically bequeathed a few items. The article expresses no concern about who is to be given that property but instead articulates most clearly the special confidence Miss Worthley held in the judgment of her three named "friends." Nothing in the provision could reasonably lead us to infer that she rested her confidence *only* in a collective decision to be reached by all three of those persons, to the exclusion of the collective judgment of any two that survived her. Rather, it is because each of them was her friend that she entrusted them with this power. If we give the terms of the will their reasonable meaning as we must, *Bodfish v. Bodfish,* 105 Me. 166, 171, 73 A. 1033, 1035 (1909), we cannot conclude that her friendship was with the three only as a group, rather than with each person as an individual. The death of one, therefore, would in no way lessen the confidence Miss Worthley reposed in the judgment of her two surviving friends. The most sensible interpretation of Miss Worthley's intent as set forth in

the disputed provision of her will is that if one of her trusted friends should die, she wished the remaining two confidants, as her friends, to exercise their considered judgment about how to dispose of her remaining furnishings.

A number of other factors bolster the conclusion that Miss Worthley intended her power of appointment to survive the death of one of the donees. First of all, in other parts of her will Miss Worthley specifically provided for the lapsing into her residuary estate of all bequests that failed to pass fully to named individuals. When she directed that $30,000 out of the proceeds from the sale of her house go to certain named individuals, she also stated that any remaining amount from the sale "be added to and made a part of the residue of my estate." In the fourth article of the will, setting out eight bequests to named individuals, she also provided that if any of those individuals did not survive her, "such bequest shall lapse." Miss Worthley gave no such direction for lapsing in the disputed fifth article and must have considered it highly unlikely, having gone to the trouble of naming three living friends as donees, that circumstances could ever result in such a lapse. Having granted the power of appointment to *three* trusted friends, she most likely believed that if not all, at least one or two of the group would survive her to make the appointment. The language "insofar as possible" also suggests that she wanted the power to be given an interpretation most congenial to its continued viability, rather than one that rendered her disposition nugatory upon the not unthinkable possibility that one of her three friends might die before her.

Still further, it seems unlikely that she would want such intimate possessions as her personal furniture and furnishings, which probably would carry special mean-

**3.** A decision by a single federal judge, *James v. United States,* 448 F.Supp. 177, 178–79 (D.Neb. 1978), asserts as a "general rule" that the power cannot survive unless coupled with an interest. *James,* however, misinterprets earlier case law in which courts read the coupling of a power with an interest either to override an apparent intent that the power not survive the death of

one of its donees, *see Wilson v. Snow,* 228 U.S. 217, 222–23, 33 S.Ct. 487, 489–90, 57 L.Ed 807 (1913), or to manifest the contrary intent that the power *should* survive the death of one of its donees, *see Peter v. Beverly,* 35 U.S. (10 Pet.) at 564–65, 9 L.Ed. 522. Since here Miss Worthley did not couple the power with an interest, we must look for other intimations of her intent.

ing for certain of her friends surviving her, to pass into the residue of her estate where Miss Worthley directed them to be "reduce[d] ... to cash or other liquid assets" and divided among all the individuals and organizations named in the will. Instead Miss Worthley looked to her closest friends, likely to know for whom Miss Worthley's furniture and furnishings hold special meaning beyond their pecuniary value, to ensure that her intimate possessions were appropriately placed. For her residuary estate, Miss Worthley provided a far less personal treatment, requiring that all estate taxes be paid out of her residuary estate and "that all bequests and devises *other than residuary* be free of tax." (Emphasis added) It would do great injustice to Miss Worthley to ascribe to her an intent that her most personal possessions be "reduced to cash" for the payment of taxes simply because a single one of her three confidants predeceased her.

Since the will provides no intimations of an intent contrary to that which is reasonably apparent in the document when read as a whole, *Estate of Sweet,* 519 A.2d 1260, 1264 (Me.1987), we affirm the decision of the York County Probate Court that the general power of appointment created by Miss Worthley survives in the two named friends still living.

The entry is:

Judgment affirmed.

NICHOLS, GLASSMAN and CLIFFORD, JJ., concurring.

WATHEN, Justice, with whom SCOLNIK, Justice, joins, dissenting.

I must respectfully dissent. I agree that the will provision creates a power of appointment, but I do not agree that the power survives the death of one of the joint donees. It is my judgment that the Court has exceeded the proper bounds of interpretation and has, in effect, actually added a clause to Miss Worthley's will. Although there is little authority directly on point, that fact does not justify the abandonment of any principled basis for the decision. We have previously defined a general power of appointment as a power given to a

donee to appoint anyone, including himself, as the beneficial owner of the property. *Moore v. Emery,* 137 Me. 259, 274, 18 A.2d 781, 788 (1941). Unlike the office of an executor or a trustee, a power of appointment, conferred upon a person by name, is personal and can be exercised only by the donee. *Bratton v. Trust Co. of Georgia,* 191 Ga. 49, 11 S.E.2d 204, 207 (1940). If the donee predeceases the testator, the power to appoint does not pass to anyone, there is no office for the probate court to fill, and the devise fails. The opinion of the Court ignores the analogy to a sole donee and silently rejects the principles derived from such cases. Essentially the Court concludes that the absence of any explicit reference to the residuary clause in a failed devise justifies the Court in rewriting the will in order to avoid the residuary clause. The Court commences its creative exegesis under a forceful incantation of testamentary intent and concludes with the weak assertion that no authority has been found "that directly contradicts the overriding proposition that the answer must lie in the intent of the testator." Strangely enough, the Court seems to view the residuary clause as alien to the intent of the testator.

Although only one court has decided whether a power of appointment survives the death of one of two or more jointly named donees, that court logically concluded from analogous cases involving a single donee that, "unless otherwise provided, where a power is conferred on two or more persons, and it is dependent on their judgment whether or not it shall be exercised, the power is a special confidence in their combined judgments, and the concurrence of both or all is necessary to a valid exercise of the power." *James v. United States,* 448 F.Supp. 177, 178 (D.Neb.1978). I would rule that the power does not survive the death of one of the donees, unless the grantor expressly provides therefor or the power is coupled with an interest. *Wilson v. Snow,* 228 U.S. 217, 223, 33 S.Ct. 487, 490, 57 L.Ed. 807 (1913); *Peter v. Beverly,* 35 U.S. (10 Pet.) 532, 564, 9 L.Ed. 522 (1836). Because the Robies possess no interest in the property beyond the power to appoint themselves, the power is not coupled with an interest. "It is the posses-

sion of the legal estate, or a right in the subject over which the power is to be exercised, that makes the interest." *Peter*, 35 U.S. at 564. No interest is created simply because the donees may derive a personal benefit from the exercise of the power. *Id.*

The language of Miss Worthley's will does not provide that the power will survive the death of one of the donees. In my judgment, the power is therefore no longer valid and the property referred to in the Fifth provision of the will should properly become a part of the residuary estate. I would vacate the order of the Probate Court.